1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  WAYNE SNODGRASS, State Bar #148137
   SHERRI SOKELAND KAISER, State Bar #197986
3  Deputy City Attorneys
   City Hall, Room 234
4  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
5  Telephone:    (415) 554-4691
   Facsimile:    (415) 554-4747
6  E-Mail:       sherri.sokeland.kaiser@sfgov.org

7  Attorneys for Defendant
   THE SAN FRANCISCO RENT AND ARBITRATION BOARD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| VANCE S. ELLIOTT,<br><br>       Plaintiff,<br><br>  vs.<br><br>THE SAN FRANCISCO RENT AND ARBITRATION BOARD,<br><br>       Defendant. | Case No. CV 08-2352 SBA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (FED. R. CIV. P. 12(B)(1))**<br><br>Hearing Date:  September 16, 2008<br>Time:  1:00 p.m.<br>Place:  Courtroom 3 |
|---|---|

**NOTICE OF MOTION AND MOTION**

<u>To plaintiff, appearing pro se</u>:  Please take notice that on September 16, 2008 at 1:00 p.m., or at such other date and time as ordered by the Court, in Courtroom 3 at 1301 Clay Street, Oakland, California, before the Honorable Saundra B. Armstrong, defendant City and County of San Francisco shall and hereby does move for dismissal under Fed. R. Civ. P. 12(b)(1).

The City seeks dismissal on the ground that plaintiff lacks standing because defendant's Uniform Hotel Visitor Policy did not cause his alleged injury and the Court is therefore unable to redress it even if it grants plaintiff the relief he seeks.

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Where the City's Uniform Hotel Visitor Policy sets a minimum threshold below which residential hotel owners may not restrict tenants' rights to have overnight visitors, does the Ordinance cause private hotels to restrict plaintiff's right to receive overnight guests and thereby injure plaintiff?

(2) Where the City's Uniform Hotel Visitor Policy sets a minimum threshold protecting tenants' rights to have at least eight overnight visitors per month, can the Court redress private restrictions on plaintiff's right to receive overnight guests by striking down the Ordinance?

**INTRODUCTION**

Plaintiff gets it backward when he attacks the City and County of San Francisco's Uniform Hotel Visitor Policy as violating his asserted right to receive overnight visitors at his private residential single-room occupancy ("SRO") hotel, because in fact the purpose of the Visitor Policy is to protect that right. As is plain from the face of the Visitor Policy and its authorizing ordinance, the Visitor Policy does not require hotel owners to restrict the right to overnight visitors in any way. Instead, it forces SRO hotel owners who might otherwise forbid all overnight visitors to allow no fewer than eight overnight guests per tenant per month. So rather than set a ceiling on plaintiff's right to overnight visitors, the Uniform Hotel Visitor Policy sets a floor below which his right to visitors may not be restricted.

Because the Visitor Policy causes plaintiff no injury, and because striking it down would almost certainly compound rather than redress plaintiff's injury, plaintiff lacks standing to challenge the Visitor Policy. As the Court accordingly lacks Article III jurisdiction, it must dismiss this case under Federal Rule of Civil Procedure 12(b)(1).

**BACKGROUND**

The City and County of San Francisco Uniform Hotel Visitor Policy ("Visitor Policy") is issued and periodically revised by the San Francisco Residential Rent Stabilization and Arbitration

Board on the authority of San Francisco Administrative Code § 41D.3(b).  *See* Request for Judicial Notice in Support of Motion to Dismiss for Lack of Standing ("RFJN"), Exs. 1&2.  The purpose of the Visitor Policy is to ensure that "operators, employees or agents of Residential Hotels may not … restrict visitors to guests or occupants of these hotels except in accordance with an approved Visitor Policy, as set forth in this Chapter."  RFJN Ex. 1, S.F. Admin. Code §41D.2.

The Ordinance requires the Uniform Visitor Policy to meet the following goals:

(1)   To enhance the safety and welfare of guests and occupants of Residential Hotels;

(2)   To ensure the dignity and personal freedom of guests and occupants of Residential Hotels and their visitors by eliminating unnecessary restrictions on the ability of guests and occupants of Residential Hotels to conduct their personal and social lives in the manner that they choose.

(3)   To prevent harassment or other inappropriate interference by Residential Hotel operators, employees or agents with the personal and social lives of Residential Hotel guests and occupants and their visitors.

(4)   To respect the privacy rights and rights to quiet enjoyment of other Residential Hotel guests and occupants.

(5)   To recognize the obligation of SRO operators to maintain the safety of the premises.

(6)   To incorporate and be consistent with the provisions of Police Code Section 919(a).[1]

*Id*. § 41D.4(a)(1)-(6).  The most recent Uniform Hotel Visitor Policy balances these goals by requiring SRO owners and operators to allow at least eight overnight guests per tenant per month.  *See* RFJN Ex. 2, Uniform Hotel Visitor Policy, as amended July 11, 2006, at ¶1.B.1.

Nowhere does the Visitor Policy or its authorizing legislation restrict, or require SRO landlords to restrict, tenants' rights to have overnight visitors.  *See* RFJN Ex. 2, Uniform Hotel Visitor Policy, as amended July 11, 2006, at ¶1.B.1 ("No owner or operator of a single room occupancy hotel (SRO) shall deny a guest or occupant of the hotel the right … [t]o have eight(8) overnight guests per

---

[1] That provision provides, " No operator, employee or agent of a Residential Hotel, as defined in San Francisco Administrative Code Section 41.4(p), may impose or collect a charge for any person to visit a guest or occupant of the hotel.  No operator, employee or agent of Residential Hotel may implement or impose any policy restricting persons from visiting guests or occupants of Residential Hotel except in accordance with the provisions of the Uniform Residential Hotel Visitor Policy or any Supplemental Visitor Policy approved pursuant to Administrative Code Chapter 41D."  RFJN Ex. 3, S.F. Police Code § 919.1(a).

month"); see also RFJN Ex. 1, S.F. Admin. Code § 41D.2 (residential hotel operators "may not … restrict visitors to guests or occupants of these hotels except in accordance with an approved Visitor Policy"); RFJN Ex.3, S.F. Police Code § 919.1(a) (same). Rather, it limits the ability of SRO owners and operators to impose restrictions on guests. Should a hotel owner impose restrictions infringing the minimum rights guaranteed by the Visitor Policy, the SRO operator is guilty of an infraction, and an aggrieved tenant can petition the Rent Board for a reduction in his or her rent. *See* RFJN Ex.1, S.F. Admin. Code § 41D.7; RFJN Ex.3, S.F. Police Code § 919.1(b).

On May 7, 2008, pro se plaintiff Vance S. Elliott, a resident of an SRO that restricts overnight visitors, filed his complaint in this case. In it, he alleges that the San Francisco Uniform Visitor Policy violates the 14th Amendment. He puts no other City law at issue.

The City now brings a motion to dismiss for lack of subject-matter juridiction.

## ARGUMENT
### I. THIS CASE MUST BE DISMISSED IF THE REASONABLE INFERENCES DRAWN FROM THE PLEADINGS REVEAL THAT THIS COURT LACKS SUBJECT-MATTER JURISDICTION.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party who has been served with a complaint to move the Court to dismiss on the basis that the Court lacks jurisdiction over the subject matter of the complaint.

In ruling on a motion to dismiss, the Court must accept reasonable factual allegations in the complaint as true and construe the complaint in favor of the nonmoving party. *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998). The Court may also consider matters properly subject to judicial notice. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). While the Court should usually presume that a plaintiff will be able to prove specific facts in support of general allegations, *Luhan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), the Court's indulgence of unproven allegations is not limitless. For example, the Court should reject those allegations that are contradicted by matters subject to judicial notice as impossible for plaintiff to prove. *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990); *Mullis v. United States Bankr.Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987). It may also reject allegations that are "merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## II. PLAINTIFF LACKS STANDING TO PURSUE HIS COMPLAINT BECAUSE HIS ALLEGED INJURY IS NOT "FAIRLY TRACEABLE" TO THE VISITOR POLICY.

Plaintiff lacks standing because the City's Visitor Policy did not cause any alleged deprivation of his right to overnight visitors, nor can this Court redress such an alleged injury by invalidating the Visitor Policy.

Standing is a threshold requirement that must be satisfied for this Court to have jurisdiction over the case under Article III of the United States Constitution. *See Warth v. Seldin,* 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); *Arakaki v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002). To demonstrate standing, plaintiff must show that he "(1) … has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000).

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) is the seminal Supreme Court case to address the second element—the causation requirement—of the standing test. In *Simon*, a number of indigents and organizations challenged an IRS revenue ruling that allowed certain hospitals favorable tax treatment as charitable organizations even if they turned away indigent patients from all but emergency services. *Id*. at 28. The plaintiffs sued Treasury officials and argued that the revenue ruling should be struck down because it encouraged hospitals to deny services to indigents. *Id*. at 41-42. The plaintiffs also alleged that they had in fact been denied treatment on account of their indigency at hospitals that benefitted from the favorable tax treatment they challenged. *Id*. at 33.

On the basis of these allegations, the Supreme Court held that the plaintiffs lacked standing because their injury was not fairly traceable to the revenue ruling. Noting that the plaintiffs had not named any hospitals as defendants, the Court admonished, "a federal court [can] act only to redress

injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41-42. And even though plaintiffs alleged that the revenue ruling "encouraged" hospitals to deny services to indigent patients, but the Court observed that "[i]t is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by hospitals without regard for the tax implications." *Id*. at 42-43.

Similarly, in *Pritikin v. Department of Energy*, 254 F.3d 791 (9th Cir. 2001), the Ninth Circuit held that the plaintiff lacked standing to sue the DOE for failing to provide funding to a coordinating agency for a statutorily required medical montoring program. Even though she was one of the intended benficiaries of the medical monitoring program, plaintiff lacked standing because she sued the wrong defendant: even if the DOE did provide funding, whether or not the medical monitoring program came into existence was solely the prerogative of the coordinating agency. *Id*. at 798. "Pritikin's injury," noted the Court, "is manifestly the product of the independent action of a third party" rather than caused by defendant DOE. *Id*. (internal quotation omitted).

*Simon* and *Pritikin* control here because, like those plaintiffs, plaintiff here chosen the wrong defendant. Though plaintiff alleges that the City's Visitor Policy denies him the right to overnight guests, that allegation must be rejected as untrue. It is squarely contradicted by the Visitor Policy and its authorizing legislation, each of which sets limits on the SRO landlord's abililty to impose restrictions rather than imposing restrictions itself. *See* RFJN Ex. 2, Uniform Hotel Visitor Policy, as amended July 11, 2006, at ¶1.B.1 ("No owner or operator of a single room occupancy hotel (SRO) shall deny a guest or occupant of the hotel the right … [t]o have eight(8) overnight guests per month"); see also RFJN Ex. 1, S.F. Admin. Code § 41D.2 (residential hotel operators "may not … restrict visitors to guests or occupants of these hotels except in accordance with an approved Visitor Policy"); RFJN Ex. 3, S.F. Police Code § 919.1(a) (same).

Thus, if there is one, the proper defendant is the SRO hotel that may actually have limited plaintiff's overnight visitors. Under the authority of *Simon* and *Pritikin*, this independent action of a third party is not "fairly traceable" to the City. And unlike in *Simon* and *Pritikin*, the City's Visitor Policy cannot even be said to "encourage" or fund the third-party hotel's decision to deny plaintiff

visitors. To the contrary, the explicit aim of the policy is to limit SROs' restrictions on overnight guests, not to encourage their imposition.

Because facts subject to judicial notice unequivocally show that only the SRO, and not the City, could have limited plaintiff's visitors, even if the City's Visitor Policy had encouraged the hotel's alleged action (which it did not), plaintiff cannot show that his injury is fairly traceable to the City or its policies. Under both Supreme Court and Ninth Circuit precedent, plaintiff lacks standing and his case must be dismissed.

### III.  PLAINTIFF ALSO LACKS STANDING BECAUSE A FAVORABLE DECISION WOULD NOT REDRESS HIS ALLEGED INJURY.

Plaintiff independently fails the third prong of the standing test—redressability—and his case must be dismissed for that reason as well.

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 243 (1982). "It must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted) (alterations in original). So, for example, the *Simon* plaintiffs failed to show redressability because they could only speculate that the tax treatment hospitals could expect if the revenue ruling were struck down would in fact cause them to treat additional indigent patients, and "unadorned speculation will not suffice to invoke the federal judicial power." *Simon*, 426 U.S. at 44. Likewise, in *Pritikin*, plaintiff could not satisfy the redressability requirement because she "failed to show how ordering DOE to request funding would lead to the tangible result of a Hanford medical motoring program when only ATSDR has the power to actually initiate the program." *Pritikin*, 254 F.3d at 801.

Far from the required "likely," plaintiff's claim to redressabililty in this case is not merely speculative, but nonexistent. Even if the Court were to strike down the Visitor Policy tomorrow, plaintiff's injury would more likely be compounded by additional SRO-imposed restrictions than dissipated. It is, after all, the Visitor Policy that guarantees plaintiff access to overnight visitors in the first place. It thus defies logic to speculate that that eliminating it will enhance plaintiff's access to overnight guests, and such counterfactual speculation cannot confer subject-matter jurisdiction. "A

1. federal court is powerless to create its own jurisdiction by embellishing otherwise deficient
2. allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).
3.     Because the Court cannot likely redress plaintiff's asserted injury even if it were to invalidate
4. the Visitor Policy, plaintiff lacks standing.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint for lack of standing, a necessary component of its subject-matter jurisdiction.

Dated: August 4, 2008

                    DENNIS J. HERRERA
                    City Attorney
                    WAYNE SNODGRASS
                    SHERRI SOKELAND KAISER
                    Deputy City Attorneys

            By: _____/s/_____.
                    SHERRI SOKELAND KAISER

                    Attorneys for Defendant
                    THE SAN FRANCISCO RENT AND ARBITRATION BOARD

**PROOF OF SERVICE**

I, DIANA QUAN, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action.  I am employed at the City Attorney's Office of San Francisco, #1 Dr. Carlton B. Goodlett Place – City Hall, Room 234, San Francisco, CA 94102.

On August 4, 2008, I served the following document:

- **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION  (FED. R. CIV. P. 12(B)(1))**

on the following persons at the locations specified:

**Vance S. Elliott
The Baldwin House
74 Sixth Street, #227
San Francisco, CA 94103-1668**

in the manner indicated below:

☒ **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service.  I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail.  In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☐ **BY PERSONAL SERVICE**: I sealed true and correct copies of the above documents in addressed envelope(s) and caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed August 4, 2008, at San Francisco, California.

/s/ _____
DIANA QUAN