DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
SHERRI SOKELAND KAISER, State Bar #197986
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4691
Facsimile:    (415) 554-4747
E-Mail:       sherri.sokeland.kaiser@sfgov.org

Attorneys for Defendant
THE SAN FRANCISCO RENT AND ARBITRATION BOARD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCE S. ELLIOTT,<br><br>                Plaintiff,<br><br>        vs.<br><br>THE SAN FRANCISCO RENT AND ARBITRATION BOARD,<br><br>                Defendant. | Case No. CV 08-2352 SBA<br><br>**[PROPOSED] ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant San Francisco Rent Stabilization and Arbitration Board has moved to dismiss this case because this Court lacks subject-matter jurisdiction.  For the reasons set forth below, the City's motion is granted.

The City and County of San Francisco Uniform Hotel Visitor Policy ("Visitor Policy") is issued and periodically revised by the San Francisco Residential Rent Stabilization and Arbitration Board on the authority of San Francisco Administrative Code § 41D.3(b).  The purpose of the Visitor Policy is to ensure that "operators, employees or agents of Residential Hotels may not … restrict visitors to guests or occupants of these hotels except in accordance with an approved Visitor Policy, as set forth in this Chapter."  S.F. Admin. Code §41D.2.

The Ordinance requires the Uniform Visitor Policy to meet the following goals:

(1) To enhance the safety and welfare of guests and occupants of Residential Hotels;

(2) To ensure the dignity and personal freedom of guests and occupants of Residential Hotels and their visitors by eliminating unnecessary restrictions on the ability of guests and occupants of Residential Hotels to conduct their personal and social lives in the manner that they choose.

(3) To prevent harassment or other inappropriate interference by Residential Hotel operators, employees or agents with the personal and social lives of Residential Hotel guests and occupants and their visitors.

(4) To respect the privacy rights and rights to quiet enjoyment of other Residential Hotel guests and occupants.

(5) To recognize the obligation of SRO operators to maintain the safety of the premises.

(6) To incorporate and be consistent with the provisions of Police Code Section 919(a).

*Id*. § 41D.4(a)(1)-(6). The most recent Uniform Hotel Visitor Policy balances these goals by requiring SRO owners and operators to allow at least eight overnight guests per tenant per month. *See* Uniform Hotel Visitor Policy, as amended July 11, 2006, at ¶1.B.1.

Nowhere does the Visitor Policy or its authorizing legislation restrict, or require SRO landlords to restrict, tenants' rights to have overnight visitors. Rather, it limits the ability of SRO owners and operators to impose restrictions on guests. Should a hotel owner infringe the minimum rights guaranteed by the Visitor Policy, the SRO operator is guilty of an infraction, and an aggrieved tenant can petition the Rent Board for a reduction in his or her rent. *See* S.F. Admin. Code § 41D.7; S.F. Police Code § 919.1(b).

On October 27, 2006, plaintiff Vance S. Elliott, a resident of an SRO that restricts overnight visitors, filed his one-page amended complaint in this case. In it, he alleges that "[t]he Uniform Visitor Policy, passed into law in 1979, under Rule #4 of that policy, denies tenants of SRO hotels throughout this city of the right to have visitors at hours other than between 9 am and 9 pm." Amended Complaint ¶1. He puts no other City law at issue.

The City now brings a motion to dismiss for lack of subject-matter juridiction. In ruling on a motion to dismiss, the Court must accept reasonable factual allegations in the complaint as true and construe the complaint in favor of the nonmoving party. *Graham v. FEMA*, 149 F.3d 997, 1001 (9th

ORDER GRANTING MOTION TO DISMISS
CASE NO. CV 08-2352 SBA

2

n:\govlit\li2008\090102\00500994.doc

Cir. 1998).  The Court may also consider matters properly subject to judicial notice.  *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  While the Court should usually presume that a plaintiff will be able to prove specific facts in support of general allegations, *Luhan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), the Court's indulgence of unproven allegations is not limitless.  For example, the Court should reject those allegations that are contradicted by matters subject to judicial notice as impossible for plaintiff to prove.  *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990); *Mullis v. United States Bankr.Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987).  It may also reject allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff lacks standing because the City's Visitor Policy did not cause any alleged deprivation of his right to overnight visitors, nor can this Court redress such an alleged injury by invalidating the Visitor Policy.  Standing is a threshold requirement that must be satisfied for this Court to have jurisdiction over the case under Article III of the United States Constitution.  *See Warth v. Seldin,* 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); *Arakaki v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002).  To demonstrate standing, plaintiff must show that he "(1) … has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000).

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) is the seminal Supreme Court case to address the second element—the causation requirement—of the standing test.  In *Simon*, a number of indigents and organizations challenged an IRS revenue ruling that allowed certain hospitals favorable tax treatment as charitable organizations even if they turned away indigent patients from all but emergency services.  *Id*. at 28.  The plaintiffs sued Treasury officials and argued that the revenue ruling should be struck down because it encouraged hospitals to deny services to indigents.  *Id*. at 41-42.  The plaintiffs also alleged that they had in fact been denied treatment on

ORDER GRANTING MOTION TO DISMISS
CASE NO.  CV 08-2352 SBA

3

n:\govlit\li2008\090102\00500994.doc

account of their indigency at hospitals that benefitted from the favorable tax treatment they challenged. *Id*. at 33.

On the basis of these allegations, the Supreme Court held that the plaintiffs lacked standing because their injury was not fairly traceable to the revenue ruling. Noting that the plaintiffs had not named any hospitals as defendants, the Court admonished, "a federal court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41-42. And even though plaintiffs alleged that the revenue ruling "encouraged" hospitals to deny services to indigent patients, but the Court observed that "[i]t is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by hospitals without regard for the tax implications." *Id*. at 42-43.

Similarly, in *Pritikin v. Department of Energy*, 254 F.3d 791 (9th Cir. 2001), the Ninth Circuit held that the plaintiff lacked standing to sue the DOE for failing to provide funding to a coordinating agency for a statutorily required medical montoring program. Even though she was one of the intended benficiaries of the medical monitoring program, plaintiff lacked standing because she sued the wrong defendant: even if the DOE did provide funding, whether or not the medical monitoring program came into existence was solely the prerogative of the coordinating agency. *Id*. at 798. "Pritikin's injury," noted the Court, "is manifestly the product of the independent action of a third party" rather than caused by defendant DOE. *Id*. (internal quotation omitted).

*Simon* and *Pritikin* control because, like those plaintiffs, plaintiff here chosen the wrong defendant. Though plaintiff alleges that defendants's Visitor Policy denies him the right to overnight guests, that allegation is patently untrue. It is squarely contradicted by the Visitor Policy and its authorizing legislation, each of which sets limits on the SRO landlord's ability to impose restrictions rather than imposing restrictions itself.

Thus, if there is one, the proper defendant is the SRO hotel that may actually have limited plaintiff's overnight visitors. Under the authority of *Simon* and *Pritikin*, this independent action of a third party is not "fairly traceable" to the City. And unlike in *Simon* and *Pritikin*, the City's Visitor Policy cannot even be said to "encourage" or fund the third-party hotel's decision to deny plaintiff

visitors. To the contrary, the explicit aim of the policy is to limit SROs' restrictions on overnight guests, not to encourage their imposition.

Because facts subject to judicial notice unequivocally show that only the SRO, and not the City, could have limited plaintiff's visitors, even if the City's Visitor Policy had encouraged the hotel's alleged action (which it did not), plaintiff cannot show that his injury is fairly traceable to the City or its policies. Under both Supreme Court and Ninth Circuit precedent, plaintiff lacks standing and his case must be dismissed.

Plaintiff also independently fails the third prong of the standing test—redressability—and his case must be dismissed for that reason as well. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 243 (1982). "It must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted) (alterations in original). Far from the required "likely," plaintiff's claim to redressabililty in this case is not merely speculative, but nonexistent. It is, after all, the Visitor Policy that guarantees plaintiff access to overnight visitors in the first place. It thus defies logic to speculate that that eliminating it will enhance plaintiff's access to overnight guests, and such counterfactual speculation cannot confer subject-matter jurisdiction. "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

For the foregoing reasons, this Court GRANTS defendant's motion to dismiss for lack of standing.

IT IS SO ORDERED.

Dated:

                                       SAUNDRA BROWN ARMSTRONG
                                       UNITED STATES DISTRICT JUDGE

**PROOF OF SERVICE**

I, DIANA QUAN, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, #1 Dr. Carlton B. Goodlett Place – City Hall, Room 234, San Francisco, CA 94102.

On August 4, 2008, I served the following document:

- **[PROPOSED] ORDER GRANTING MOTION TO DISMISS FOR LACK OF STANDING**

on the following persons at the locations specified:

**Vance S. Elliott**
**The Baldwin House**
**74 Sixth Street, #227**
**San Francisco, CA 94103-1668**

in the manner indicated below:

☒ **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☐ **BY PERSONAL SERVICE**: I sealed true and correct copies of the above documents in addressed envelope(s) and caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed August 4, 2008, at San Francisco, California.

/S/
_____
DIANA QUAN